IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DEBORAH FAEHNRICH, an individual,<br><br>Faehnrich,<br><br>v.<br><br>MONTE CARLO TRANSPORT COMPANY, a foreign corporation, KEVIN SEAN MORAN, an individual, and DOES 1-5.<br><br>Monte Carlos. | **MEMORANDUM DECISION AND ORDER DENYING MONTE CARLO'S MOTION TO DISMISS**<br><br>Case No. 2:23-cv-00316<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

This action concerns a traffic incident between Plaintiff Deborah Faehnrich and Defendant Kevin Sean Moran, an employee-driver for Defendant Monte Carlo Transport Company (Monte Carlo). In her Complaint, Faehnrich asserts various state tort law causes of action against Monte Carlo, including negligent hiring, negligent entrustment, gross negligence, and respondeat superior.[1] Now before the court is Monte Carlo's Motion to Dismiss for Lack of Personal Jurisdiction.[2] For the reasons explained below, Monte Carlo's Motion is DENIED.

## BACKGROUND

### The Parties

Faehnrich is a resident of Colorado.[3] Monte Carlo is an interstate trucking company incorporated in Ohio, where its principal place of business is also located.[4]

---

[1] Dkt. 1, Ex. A (Complaint) 6–15.

[2] Dkt. 12, Rule 12(b)(2) Motion to Dismiss Defendant Monte Carlo Transport Co. for Lack of Personal Jurisdiction (Motion to Dismiss).

[3] Complaint ¶ 1.

[4] Motion to Dismiss at 2.

1

The Incident

On July 27, 2022, Moran, a long-haul truck driver for Monte Carlo, was driving on an interstate passing through Salt Lake City, Utah.[5] Earlier in the day, he entered Utah from Nevada en route to Ohio.[6] Monte Carlo instructed him to drive through Utah as it was the most direct route to his dispatched destination.[7]

As Faehnrich attempted to merge onto the interstate, she noticed Moran accelerate behind her to prevent her from doing so.[8] Moran then closely followed Faehnrich as she later exited the freeway.[9] Faehnrich came to a stop on the side of the road at the base of the off-ramp when Moran exited his truck and ran toward Faehnrich's car.[10] Moran struck Faehnrich's car, smashing the driver's side mirror before beginning to return to his truck.[11] When Faehnrich got out of her car to take a picture of the truck's license plate, Moran turned back and hit her several times.[12] Bystanders prevented Moran from fleeing the scene and called law enforcement, who arrested Moran upon arrival.[13]

Procedural History

On April 14, 2023, Faehnrich brought this action against Moran and Monte Carlo in the Third Judicial District Court for Salt Lake County.[14] In her Complaint she asserts a range of

---

[5] Complaint ¶¶ 11, 17.
[6] Motion to Dismiss at 3.
[7] *Id.* at 3–4.
[8] Complaint ¶¶ 19–20.
[9] *Id.* ¶¶ 22–24.
[10] *Id.* ¶¶ 25–26.
[11] *Id.* ¶¶ 27–28.
[12] *Id.* ¶¶ 29–34.
[13] *Id.* ¶¶ 38–40.
[14] Dkt. 1, Notice of Removal.

state tort law claims against Monte Carlo, including: negligent hiring, training, and supervision; negligent entrustment; gross negligence; and respondeat superior.[15]  On May 15, 2023, Monte Carlo removed the case to federal court, invoking this court's diversity jurisdiction.[16]  On August 2, 2023, Monte Carlo filed a Motion to Dismiss for lack of personal jurisdiction.[17]  The Motion is now fully briefed and ripe for review.

## LEGAL STANDARD

When the court considers a defendant's motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing that personal jurisdiction exists.[18]  In the absence of an evidentiary hearing, the court's evaluation is based on the pleadings and any supporting affidavits.[19]  The court accepts as true all well-pleaded factual allegations in the plaintiff's complaint and any factual disputes—to include conflicts in affidavits submitted by the parties—must be resolved in the plaintiff's favor.[20]

To establish personal jurisdiction over Monte Carlo here, Faehnrich bears the burden of showing "first, that jurisdiction is authorized under Utah law and, second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[21]  Utah's long-arm statute authorizes the exercise of jurisdiction "over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States

---

[15] *Id.* ¶¶ 41–92.

[16] Dkt. 1.

[17] Dkt. 12, Motion to Dismiss.

[18] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

[19] *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) ("[I]n the absence of a full evidentiary hearing . . . the determination involves an application of the law to the facts as set forth in the affidavits and complaints . . . .").

[20] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[21] *Rusakiewicz*, 556 F.3d at 1100 (citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

Constitution."[22]  Accordingly, the two-step jurisdictional analysis effectively collapses into a one-step constitutional inquiry.[23]

"The Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident defendant to a judgment of its courts."[24]  For a federal court sitting in diversity to exercise jurisdiction, "the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[25]  Though physical presence by a nonresident in the forum is not required, "physical entry into the State—either by the defendant in person, or through an agent, goods, mail, or some other means—is certainly a relevant contact."[26]  The court evaluates both "minimum contacts" and harmony with "traditional notions of fair play and substantial justice" when determining if personal jurisdiction exists.[27]

Specific personal jurisdiction permits a court to "exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contact with the forum state."[28]  The Tenth Circuit describes specific jurisdiction as a sort of *quid pro quo*: "in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."[29]  To be permissible, "the *suit* must

---

[22] Utah Code § 78B-3-201.

[23] *Dudnikov*, 514 F.3d at 1070.

[24] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[25] *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[26] *Id.* at 285.

[27] *Dudnikov*, 514 F.3d at 1071.

[28] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

[29] *Id.*

aris[e] out of or relat[e] to the defendant's contacts with the *forum*."[30] The plaintiff cannot serve as the sole link between the defendant and the forum state.[31] "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[32] Accordingly, the minimum contacts tests consists of two requirements: "(i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'"[33]

Purposeful direction—the first step of the minimum contacts test—requires "some act by which the defendant[s] purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State[.]"[34] This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."[35] The Tenth Circuit evaluates purposeful direction using one of three frameworks.[36] The harmful effects framework is the most applicable in the context of personal injury torts committed by an out-of-state defendant.[37] Faehnrich must show "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state."[38]

---

[30] *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (emphasis in original) (internal quotations and citations omitted).

[31] *Walden*, 571 U.S. at 285.

[32] *Id.*

[33] *Old Republic*, 877 F.3d at 904 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

[34] *Rusakiewicz*, 556 F.3d at 1101 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

[35] *Old Republic*, 877 F.3d at 904–05 (quoting *Burger King*, 471 U.S. at 475).

[36] *Id.* at 905 (noting "three frameworks for determining whether an out-of-state defendant's activities satisfy the purposeful direction requirement: (1) continuing relationships with the forum state residents . . . (2) deliberate exploitation of the forum state market . . . and (3) harmful effects in the forum state.").

[37] *See Spak v. Riturani*, No. 1:22-cv-00201-KWR-SCY, 2022 WL 3715808, at *5 (D.N.M. Aug. 29, 2022).

[38] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 841 (10th Cir. 2020) (internal quotations and citations omitted).

Step two of the minimum contacts test asks "whether the plaintiff's injuries 'arise out of' the defendant's forum-related activities."[39] The "arise out of" element requires "the plaintiff's claim arise from essentially the same type of [purposefully directed] activity, even if the activity that gave rise to the claim was not directed at the forum residents."[40] In other words, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."[41]

If the court concludes the minimum contacts test has been satisfied, it must then assess whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice."[42] Even if a plaintiff adequately demonstrates minimum contacts, a defendant "can defeat jurisdiction by presenting a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[43] To do so, courts consider the following factors: "(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies."[44]

---

[39] *Old Republic*, 877 F.3d at 908 (citing *Shrader*, 633 F.3d at 1239).

[40] *Hood v. American Auto Care, LLC*, 21 F.4th 1216, 1224 (10th Cir. 2021).

[41] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1025 (2021) (internal quotations and alterations omitted).

[42] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020).

[43] *XMission*, 955 F.3d at 840 (quoting *Burger King*, 471 U.S. at 477).

[44] *Id.*

These factors are evaluated on a "sliding scale" basis.[45] That is, the weaker a plaintiff's showing of minimum contacts, "the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction," and vice versa.[46]

## ANALYSIS

In its Motion, Monte Carlo argues this case should be dismissed for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Monte Carlo contends (1) it is not subject to general personal jurisdiction, and (2) it does not have sufficient contacts with the state of Utah to establish specific personal jurisdiction. Faehnrich raises two arguments in support of personal jurisdiction: (1) Monte Carlo's designation of an agent for service of process pursuant to the Federal Motor Carrier Act (FMCA) amounts to consent to personal jurisdiction, and (2) Monte Carlo meets the requirements for the court to exercise specific personal jurisdiction under the traditional Fourteenth Amendment Due Process Clause analysis. The court disagrees with Faehnrich's FMCA argument but finds the Fourteenth Amendment Due Process Clause is the proper framework for analyzing personal jurisdiction in this matter.[47] Beyond her FMCA argument, Faehnrich does not dispute that general jurisdiction is not

---

[45] *Id.*

[46] *Id.*

[47] Faehnrich's primary argument in support of personal jurisdiction involves Defendant's registration and designation of an agent for service of process pursuant to the Federal Motor Carrier Act (FMCA). Dkt. 14, Plaintiff's Memorandum in Opposition to Defendant's 12(b)(2) Motion to Dismiss at 8–13. Citing *Ayers v. Tanami Trading Corp.*, No. 2:08-CV-00472-DB, 2009 WL 1362402 (D. Utah May 14, 2009), *Faehnrich* argues Defendant's designation of an agent for service of process in Utah, in compliance with the requirements of the Act, amounts to consent to personal jurisdiction. To the extent Faehnrich's characterization of *Ayers* is correct, the court disagrees with the decision and declines to follow it. The court agrees with the majority of other courts who have found designation of an agent pursuant to the FMCA does not constitute consent to personal jurisdiction. *See, e.g., Hub Group, Inc. v. Go Hub Group Holdings, Corp.*, No. 19-cv-7648, 2021 WL 4264349 (N.D. Il. Sept. 20, 2021) ("This court agrees with the myriad other courts that have found designating an agent under the FMCA insufficient to sustaining general personal jurisdiction over a defendant."); *Carson v. Western Express*, 19 Civ. 2227 (ER), 2019 WL 6050730, at *3 (S.D.N.Y. Nov. 14, 2019) (finding post-*Daimler* that "designation of an agent for service alone cannot provide this Court with general personal jurisdiction over Defendants"); *Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp.2d 730, 732 (D. Md. 2003) (rejecting plaintiffs' argument that trucking company's appointment of registered agent is provides consent to personal jurisdiction).

applicable. Accordingly, the court addresses only whether Monte Carlo is subject to specific personal jurisdiction.

I. **Monte Carlo is Subject to Specific Personal Jurisdiction**

The court finds Faehnrich has adequately demonstrated the exercise of specific jurisdiction over Monte Carlo comports with the Due Process Clause of the Fourteenth Amendment. Monte Carlo argues it "has not 'purposefully availed' itself of the privileges and protections of Utah and does not have sufficient contacts with this State to establish specific personal jurisdiction."[48] In opposition, Faehnrich contends specific jurisdiction is appropriate because, in "instruct[ing] its drivers to utilize Utah's roadways to conduct its business[,]" Monte Carlo has established minimum contacts with the State of Utah and her claims arise out of those contacts and activities.[49] The court agrees.

Monte Carlo asserts it has not availed itself of the privileges and protections of Utah's laws because, other than the use of the interstate system to traverse the state, its business does not touch Utah.[50] Monte Carlo argues its conduct in Utah bears none of the hallmarks of purposeful availment establishing specific jurisdiction set forth in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*[51] Monte Carlo "maintains no shipping yards, depots, employees, bank accounts, or telephone listings in Utah[,]" nor does it "receive or deliver freight directly to Utah."[52] Its "sole connection to Utah is that its drivers pass through Utah using the interstate

---

[48] Motion to Dismiss at 10.

[49] Dkt. 14, Plaintiff's Memorandum in Opposition to Defendant's 12(b)(2) Motion to Dismiss (Plaintiff's Opposition) at 13.

[50] Motion to Dismiss at 14.

[51] *Id.* at 12.

[52] *Id.* at 2.

system."[53] More apt, Monte Carlo contends, is *Walden v. Fiore*[54] and *ClearOne v. Revolabs*,[55] a case from the Utah Supreme Court. Unlike *Ford*, where the auto manufacturer's substantial contacts with the forum states rendered it amenable to specific jurisdiction for defective vehicles manufactured out-of-state,[56] in *Walden* and *ClearOne*, specific jurisdiction was not permitted where the defendants' only contacts with the forum were the plaintiffs. Monte Carlo's situation, it argues, is akin to these latter cases.[57] Though Moran, Monte Carlo's then-driver, "may 'have a lot to do with [Plaintiff],' as Plaintiff was in Utah at the time of her allegations, Monte Carlo's conduct has 'little to do with Utah.'"[58]

In her Opposition, Faehnrich argues Monte Carlo availed itself of the privilege of conducting business in Utah and her claims arise out of those contacts.[59] "It is indisputable[,]" Faehnrich asserts, "that Monte Carlo instructs its drivers to utilize Utah's roadways to conduct its business as a national trucking company that services all parts of the United States."[60] According to Faehnrich, "it is clear" Monte Carlo purposefully directed its business in Utah by directing its employees to use Utah's roadways in their interstate operations.[61] Further, Faehnrich argues, her claims involving the incident with Moran arise directly from Monte Carlo's intentional entry into the State for the purpose of using its roadways and the events that

---

[53] *Id.*

[54] *Walden*, 571 U.S. at 289.

[55] *ClearOne, Inc. v. Revolabs, Inc.*, 369 P.3d 1269 (Utah 2016).

[56] *Ford Motor Co.*, 141 S.Ct. at 1028 (finding purposeful availment where Ford's directed activity in the forum states included advertising, dealerships facilitating the purchase of new and used vehicles, and other efforts to "foster ongoing connections to its cars' owners.").

[57] Motion to Dismiss 13–14.

[58] *Id.* at 14.

[59] Plaintiff's Opposition at 13–14.

[60] *Id.* at 13.

[61] *Id.* at 13–14.

9

ensued on those roadways.[62] Faehnrich points out these facts are distinct from the *Revolabs* case Monte Carlo relies upon—a case the Utah Supreme Court clarified in *Raser Technologies* where it held "'physical entry into the state—either by the defendant in person, or through an agent . . .' would satisfy the standard for targeting the forum state."[63] Monte Carlo, through its agent Moran, physically entered Utah.

For purposes of establishing minimum contacts, it is this fact Monte Carlo fails to reckon with. It is undisputed Monte Carlo's employee, Moran, purposefully entered Utah and was instructed by Monte Carlo to remain on Utah's highways because "that was the most direct route to his dispatched destination."[64] It is true Monte Carlo's contacts with Utah appear to be temporary. However, even minimal contacts may still amount to minimum contacts when purposefully directed at the forum and the claim arises from them.

In terms of the *quid pro quo* at the heart of specific personal jurisdiction, this case is a text-book example. Monte Carlo benefitted from purposefully directing its driver to enter the state and traverse Utah's roadways—those roads offered the most direct route to its destination— and, in exchange for that benefit, Monte Carlo consented to the exercise of jurisdiction for claims related to that contact—that is, claims arising from Monte Carlo's use of the roadways.[65] This contact was not "random, fortuitous, or attenuated."[66] Applying the harmful effects framework, Monte Carlo intentionally directed its driver to enter Utah and use its roads to conduct its business. This conduct was expressly aimed at the forum state and Monte Carlo, as an interstate

---

[62] *Id.* at 16.

[63] *Id.* at 15–16 (quoting *Raser Techs., Inc. v. Morgan Stanley & Co.*, 449 P.3d 150 (Utah 2019) (citing *Walden*, 571 U.S. at 285)).

[64] Motion to Dismiss at 3–4.

[65] *See Dudnikov*, 514 F.3d at 1078.

[66] *Old Republic*, 877 F.3d at 905 (quoting *Burger King*, 471 U.S. at 475).

trucking company, would know "the brunt of [any] injury" relating to that conduct would be felt in Utah.[67]

Further, Faehnrich's claims clearly arise out of this purposeful contact. There is a direct nexus between Monte Carlo's contact—driving on Utah's roadways—and Faehnrich's claims—a traffic related incident resulting from Monte Carlo's use of those roadways. This is not a case where Monte Carlo's contact with Utah was "so random, fortuitous, or attenuated that it cannot fairly be said that [Monte Carlo] should reasonably anticipate being haled into court" in Utah.[68] Monte Carlo purposefully directed its driver to use Utah's roadways and it could reasonably anticipate being haled into Utah's courts for claims arising from that use. This is true even when some of those claims involve negligence occurring out of state because that negligence has a causal relationship with the incident occurring on a Utah roadway.[69]

Having found Faehnrich has met her burden in demonstrating minimum contacts, the court now considers whether Monte Carlo has shown the exercise of jurisdiction would be unreasonable.[70] Monte Carlo makes no arguments relating to this element of the inquiry and the court finds none of the factors traditionally considered weigh definitively in favor of Monte Carlo. Accordingly, the exercise of personal jurisdiction over Monte Carlo for claims directly

---

[67] *XMission*, 955 F.3d at 841.

[68] *Burger King*, 471 U.S. at 486.

[69] *See Spak v. Riturani*, 2022 WL 3715808, at *7 (finding plaintiffs' claims arise out of trucking company's purposeful use of forum state's roads even when negligent hiring, training, and entrustment occurred in another state because the negligence "claims have a causal relationship to the accident which occurred on a New Mexico highway.").

[70] *See Dudnikov*, 514 F.3d at 1080 ("[W]ith minimum contacts established, it is incumbent on defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)).

related to its purposeful contacts with the State of Utah would not "offend traditional notions of fair play and substantial justice."[71]

## CONCLUSION

For the reasons explained above, Monte Carlo's Motion[72] is DENIED.

**SO ORDERED** this 20th day of October, 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[71] *International Shoe*, 326 U.S. at 316.

[72] Dkt. 12.

12